## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JESSICA LOPER JOHNSON | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | _____ |
| | : | |
| | : | |
| AMATUS HEALTH, LLC | : | |
| (d/b/a AMATUS RECOVERY | : | |
| CENTERS) and | : | |
| ATLANTA DETOX CENTER, LLC | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

## COMPLAINT

Plaintiff Jessica Loper Johnson ("Plaintiff" or "Loper-Johnson")

files her Complaint against Defendants Amatus Health, LLC (d/b/a

Amatus Recovery Centers) ("Amatus Health") and Atlanta Detox

Center, LLC (also d/b/a Atlanta Center for Mental Health) ("Atlanta

Detox") (collectively "Defendants").

## NATURE OF THE ACTION

### 1.

This is an action for interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et* seq.; for discrimination and retaliation under Title VII, 42 U.S.C. §§ 2000e et seq. ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978; discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act of 1990, as amended, 42 U.S. §§ 12101 *et seq*. ("ADA"), and failure to provide notice under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 *et seq*. ("COBRA").

## PARTIES

### 2.

Plaintiff Jessica Loper Johnson is a U.S. citizen and resident of Fulton County in the State of Georgia.

### 3.

Defendant Amatus Health, LLC (d/b/a Amatus Recovery Centers) is a limited liability corporation formed and operating under the laws of Maryland with its principal address at 1825 Woodlawn Drive 204, Baltimore, Maryland, 21207. Amatus Health is subject to actions under

Title VII, the FMLA, Title VII, ADA, and COBRA/ERISA, and can be

served with summons and complaint upon its Registered Agent: Jacob

M. Rappaport, 502 Washington Avenue, 8th Floor, Towson, Maryland,

21204.

4.

Defendant Atlanta Detox Center, LLC ( also d/b/a Atlanta Center

for Mental Health) is a limited liability corporation formed and

operating under the laws of Georgia with its principal address at 10019

Reisterstown Road, Owings Mills, Maryland, 21117. The Company is

subject to actions under Title VII, the FMLA, and ADA and can be

served with summons and complaint upon its Registered Agent: Adam

Neal Struletz at 6400 Powers Ferry Road, N.W., Suite 200, Atlanta,

Georgia, 30339.

**JURISDICTION AND VENUE**

5.

The claims brought in this lawsuit present federal questions and

jurisdiction in this court is proper under 28 U.S.C. § 1331. In addition, this

court has jurisdiction of the failure to provide Plaintiff a COBRA notice under

29 U.S.C. § 1132.

3

6.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391. Defendants own or operate a business in this judicial district and division at: 277 Medical Way, Riverdale, GA 30274. The alleged acts against Plaintiff also occurred in this judicial district and division.

7.

Plaintiff perfected a charge against both Defendants with the Equal Employment Opportunity Commission on or about November 16, 2021. The EEOC issued a Notice of Right to Sue on or about August 26, 2022.

8.

Amatus Health and Atlanta Detox are joint or single employers under Title VII, the FMLA, and ADA.

9.

Amatus Health owns and operates Atlanta Detox and Georgia Addiction Treatment Center, LLC ("GATC") in Georgia.

10.

Managers and Human Resources employees at Amatus Health participate in the management and employment decisions regarding Plaintiff and other employees at their facilities in Georgia.

4

11.

Employee policies for all entities owned by Amatus Health are contained in a common Employee Handbook.

12.

Amatus Health refers to Atlanta Detox employees as having an employment relationship with Amatus Health in this handbook and other documents, including the severance agreement Amatus Health offered Plaintiff.

## FACTUAL ALLEGATIONS

13.

Amatus Health recruited and hired Plaintiff to serve as the Clinical Director and Liable Clinician over its subsidiary Atlanta Detox and Atlanta Center for Mental Health in Riverdale, Georgia. She started her employment on or about September 23, 2019.

14.

Plaintiff has a Masters of Science in Counseling and is a Licensed Professional Counselor (LPC) and Master of Addiction Counselor (MAC).

15.

After her first year of employment, Plaintiff received an annual review praising her job performance and a raise.

16.

Plaintiff suffers from hyperthyroidism, a medical condition that substantially limits her in the major life activities of working and moving (due to lethargy and fatigue), memory, regulating weight, and excessive menstrual bleeding.

17.

In addition, hyperthyroidism substantially limits Plaintiff in her major bodily function of her endocrine system and her reproductive system by limiting her ability to become or remain pregnant.

18.

Hyerthyroidism also substantially limits Plaintiff in her major bodily functions during pregnancy, by subjecting Plaintiff to increased risk for the complications of excessive bleeding, miscarriage, preeclampsia, anemia, low birthweight, pre-term labor, still birth, and congestive heart failure.

19.

Plaintiff takes medication to regulate her thyroid function.

20.

After undergoing a second round of in-vitro fertilization ("IVF"), Plaintiff became pregnant in 2020.

21.

Plaintiff suffered a miscarriage.

22.

Plaintiff informed several of her managers, supervisors, and co-workers of her disability, difficulties with pregnancy, and her miscarriage.

23.

Plaintiff had many conversations with Amatus Health's National Clinical Director, Avi Burnstein, about her disability, difficulties with pregnancy, and her miscarriage.

24.

Around February 2020, Amatus Health hired Mahogany Ellis as Regional Clinical Director.

25.

In her role, Ellis supervised Plaintiff and GATC's Clinical Director, Debbie Ray.

26.

Burnstein and Ellis informed Plaintiff that Ellis's role was to bring growth to both locations, serve as an advocate for clinical needs, and help with utilization review.

27.

For her second annual review, Plaintiff was again praised for her job performance.

28.

Plaintiff was told that she would not receive a raise, however, due to budget cuts and the financial struggles at Amatus Health's GATC facility.

29.

In early 2021, Plaintiff became pregnant again.

30.

Because of her hyperthyroidism, her doctor informed her that this pregnancy was also high-risk and she would likely need leave for bed rest or other complications before and after delivery.

31.

Because Plaintiff had previously suffered a miscarriage, she did not want to official inform Human Resources personnel of her pregnancy before ensuring her current pregnancy was viable.

32.

Plaintiff discussed her pregnancy, disability, and potential complications with Ellis.

33.

Plaintiff also discussed her pregnancy, disability, and potential complications with Burnstein.

34.

On Tuesday, October 19, 2021, Plaintiff was asked by email to attend a corporate training session during Thanksgiving week in November.

35.

Plaintiff responded by stating that she would have to check if her doctor would approve her travel because of her disability and pregnancy.

36.

Because she had now shared her pregnancy with another employee at the corporate office besides Burnstein, she emailed Michael Tyler, in Human Resources, to ask if Amatus Health had instituted a maternity leave policy that had been recently discussed.

37.

Tyler replied that there was still not a maternity leave policy but that Amatus Health offered FMLA leave.

38.

Plaintiff replied that she would apply for short-term disability benefits and FMLA leave.

39.

In this same email communication string where she mentioned taking short-term disability leave, Plaintiff informed Tyler that her pregnancy was "high risk."

40.

Tyler directed Plaintiff to coordinate any leave with Ellis.

41.

Plaintiff emailed Rachel Fink, Vice President of Human Resources for Amatus Health, to inquire about how to apply for STD and FMLA leave, but never heard anything back from her by email.

42.

Plaintiff called Fink on Friday, October 22, 2021, but did not receive a return call.

43.

On October 22, 2021, Ellis informed Plaintiff that she was terminated because her position had been eliminated.

44.

Ellis stated that she was shocked because this decision had never been discussed with her until the evening before Plaintiff's termination.

45.

Ellis stated that the termination decision had nothing to do with Plaintiff's job performance.

46.

On the Separation Notice provided to Plaintiff (which listed the employer as "Amatus Health DBA Atlanta Detox Center"), Fink checked the "lack of work" box instead of providing job elimination as the reason for separation.

47.

Amatus Health cannot eliminate the position of Clinical Director at Atlanta Detox, Atlanta Center for Mental Health, or GATC because the Clinical Director must sign off on patient paperwork required by government regulations and accept liability for all clinical choices.

48.

The decision to terminate Plaintiff was made by three male management employees with Amatus Health, Burnstein, Chris Foster, and Casey Bright.

49.

Bright has admitted that he and the other two males made the decision to terminate Plaintiff.

50.

Burnstein knew of Plaintiff's pregnancy, disability, and past and present pregnancy complications before this decision was made.

51.

After she was informed of the termination, Plaintiff asked Fink how she could apply for COBRA benefits because she did not want to lose her health insurance benefits during her pregnancy and treatment.

52.

Plaintiff never received a response from Fink.

53.

Neither Plaintiff nor her spouse ever received any COBRA benefit election notice.

54.

Defendant's discriminatory and retaliatory acts, and interference with her ability to elect to continue health insurance benefits caused Plaintiff emotional distress, anxiety, and financial hardship.

## COUNT ONE
## INTERFERENCE WITH FMLA RIGHTS

### 55.

Defendants are employers as defined by the FMLA who employed more than 50 or more employees within a 75-mile radius.

### 56.

Plaintiff was eligible for FMLA leave because she suffered from a serious medical condition that required continued medical treatment (hyperthyroidism), was pregnant, would soon give birth to a child needing care, and worked full-time hours for Defendant for over a year.

### 57.

Rather than allow Plaintiff to apply for or take FMLA leave, Defendants interfered with her FMLA rights by terminating her within just a few days of her notifying them of her need for and intent to take such leave.

### 58.

Defendants were motivated by an intent to interfere with Plaintiff's FMLA rights.

### 59.

As a result of Defendants' interference with Plaintiff's FMLA leave rights, Plaintiff is entitled to recover the relief requested below.

## COUNT TWO
## RETALIATION UNDER THE FMLA

### 60.

By seeking FMLA leave, Plaintiff engaged in protected activity under the FMLA.

### 61.

Defendants terminated Plaintiff for engaging in this protected activity.

### 62.

Defendants' termination of Plaintiff was motivated by an intent to retaliate against her for seeking FMLA leave.

### 63.

As a result of Defendants' retaliation against Plaintiff for seeking FMLA protected leave, she is entitled to recover the relief requested below.

## COUNT THREE
## DISCRIMINATION UNDER TITLE VII
## (AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT)

### 64.

Defendants were aware that Plaintiff was pregnant and suffered from a disability (described more specifically above in Paragraphs 16-19) that complicated her pregnancy.

65.

Plaintiff communicated to Defendants that she was seeking leave for her pregnancy and complications with her pregnancy.

66.

Rather than grant Plaintiff leave, Defendant terminated Plaintiff because of her pregnancy and pregnancy-related disability before she could even apply further for any leave.

67.

By seeking leave, Plaintiff requested accommodations for her pregnancy-related disability that Defendants have allowed for non-pregnant female employees or male employees with health conditions for which additional leave could be granted as an accommodation.

68.

Besides the financial impact, these discriminatory acts caused Plaintiff emotional distress and anxiety.

69.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT FOUR
## RETALIATION UNDER TITLE VII

### 70.

Plaintiff engaged in protected activity under Title VII when she sought accommodations by notifying her employer that she needed leave for her pregnancy and pregnancy-related disability.

### 71.

Rather than grant Plaintiff leave, Defendants terminated her.

### 72.

As a result of Defendant's retaliatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT FIVE
## DISCRIMINATION UNDER THE ADA

### 73.

As described specifically above in Paragraphs 16 through 19, Plaintiff suffers from a disability as defined by the ADA and its implementing regulations.

### 74.

As described specifically above in Paragraphs 16 through 19, Plaintiff suffers from a disability that is further complicated during pregnancy.

75.

Defendants were aware that Plaintiff suffered from a disability or had a record of a disability.

76.

Defendants also regarded Plaintiff as disabled.

77.

Despite her disability, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

78.

Plaintiff was a qualified individual with a disability.

79.

After Plaintiff sought leave for her disability as an accommodation, Defendants terminated her because of her disability.

80.

Besides the financial impact, these discriminatory acts caused Plaintiff emotional distress and anxiety.

81.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT SIX
## FAILURE TO ACCOMMODATE UNDER THE ADA

82.

Defendants requested leave as a reasonable accommodation because of her disability.

83.

Defendants violated the ADA by failing to grant Plaintiff a reasonable accommodation of allowing her leave.

84.

Due to the above listed medical conditions and disability, Plaintiff needed a reasonable accommodation of leave.

85.

Defendants cannot show that it would have been an undue burden to allow Plaintiff leave as an accommodation.

86.

Rather than consider or grant Plaintiff leave as an accommodation, Defendants terminated Plaintiff.

87.

Besides the financial impact, the failure to accommodate caused Plaintiff emotional distress and anxiety.

88.

As a result of Defendants' failure to accommodate Plaintiff, she is entitled to recover the relief requested below.

**COUNT SEVEN**
**RETALIATION UNDER THE ADA**

89.

Plaintiff engaged in protected activity under the ADA when she sought accommodations by requesting leave.

90.

Rather than grant this accommodation, Defendants retaliated against Plaintiff by terminating her because she engaged in this protected activity.

91.

Defendants' retaliatory acts caused Plaintiff emotional distress and anxiety.

92.

As a result of Defendants' retaliatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT EIGHT
## FAILURE TO PROVIDE COBRA NOTICE

93.

Defendants made group health insurance benefits plans available to its employees, spouses, and dependents through United Healthcare.

94.

Either Amatus Health or United Healthcare was the plan administrator.

95.

Plaintiff enrolled in a health insurance benefits plan provided by Defendants and at the time of her termination was enrolled in such a plan.

96.

Her spouse also enrolled in the same plan.

97.

Defendants are a "qualifying employer" under COBRA because during the relevant time-period (either 2020 or 2021) they employed twenty or more full-time equivalent employees.

98.

At the time of her termination, Plaintiff was a qualified employee under COBRA who was entitled to timely notice of her option to continue the employer's health insurance benefits coverage.

99.

Defendants termination of Plaintiff was a "qualifying event" under COBRA.

100.

Defendants did not terminate Plaintiff for gross misconduct.

101.

Under COBRA, the employer must have a reasonable procedure for providing notice of continuation of benefits to covered employees and their spouses subject to a qualifying event.

102.

Although COBRA does not require an employee to inquire about continuing health benefits, Plaintiff left voicemail messages for Fink inquiring about her COBRA notice and letting her know the importance of her health benefits continuation during her pregnancy.

103.

Fink never communicated with Plaintiff regarding her COBRA inquiry.

104.

Neither Defendants nor any health benefits administrator provided notice to Plaintiff or her spouse of their right to continuing health insurance benefits, or the forms necessary to do so.

105.

Defendants did not have a reasonable procedure for ensuring that a COBRA notice is provided to its employees or their spouses enrolled in its health insurance benefits plans.

106.

Despite Plaintiff's express inquiry about a COBRA notice, Defendants did not take reasonable measures to ensure that she or her spouse received such notice.

107.

Defendants intentionally failed to provide Plaintiff and her spouse the required COBRA notice.

108.

As a result of Defendants' failure to provide Plaintiff and her spouse with notice of their rights to pay for continuing health insurance benefits under COBRA, Plaintiff and her spouse suffered a financial loss and further

out-of-pocket expenses due to a gap in coverage and having to find other health insurance coverage for which they had not met the deductible.

WHEREFORE, Plaintiff prays for the following relief:

a.    That Summons issue requiring Defendant to answer the Complaint within the time provided by law;

b.    That Plaintiff be awarded a declaratory judgment that Defendant violated the FMLA, ADA, Title VII, and COBRA;

c.    That Plaintiff recover from Defendant back pay and benefits with pre-judgment interest;

d.    That Plaintiff recover compensatory damages against Defendant in an amount to be determined by a jury;

e.    That Plaintiff recover punitive damages against Defendant in an amount to be determined by a jury;

f.    That Plaintiff recover liquidated damage against Defendant in an amount equal to any amount awarded for back pay and benefits;

g.    That the Court order injunctive or equitable relief to reinstate Plaintiff or in lieu of reinstatement provide front pay and benefits;

h.    That the Court order Defendants to pay the statutory penalty of $220 a day for failing to provide a COBRA notice to her and her spouse;

i.      That Plaintiff recover attorney's fees and costs of litigation under the

FMLA, ADA, Title VII, COBRA, and any other applicable federal law;

j.      That the Court award Plaintiff any other or further relief as it deems

necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

      Respectfully submitted this 21st day of November, 2022.

                T. Robert Reid, LLC

                <u>s/ Tilden Robert Reid, II</u>
                T. Robert Reid
                Ga. Bar No. 600138
                1030 Woodstock Road
                Suite 3112
                Roswell, Georgia  30075
                Telephone (678) 743-1064
                Facsimile (404) 549-4136
                robreidattorney@gmail.com

                Attorney for Plaintiff